UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JANET PITTMAN,

    Plaintiff,

v.                                                            Case No:   2:15-cv-547-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Janet Pittman's Complaint (Doc. 1) filed on September 10, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits.[1]  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

---

[1] Plaintiff applied for supplemental security income on February 25, 2010.  (Tr. at 265). According to Plaintiff's counsel, the supplemental security income application did not proceed because Plaintiff claimed assets above the resource limitation of $2,000.00.  (*See* Doc. 19 at 2; Tr. at 267).  Thus, the Court will focus on the disability insurance benefits only.

I.   **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

A.   **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

B.   **Procedural History**

On February 18, 2010, Plaintiff filed an application for disability insurance benefits ("DIB").  (Tr. at 196, 261-64).  Plaintiff asserted an onset date of June 1, 2009.  (Tr. at 261).  Plaintiff's application was denied initially on April 16, 2010, and on reconsideration on July 28, 2010.  (Tr. at 196, 197).

A hearing was held before Administrative Law Judge Ronald S. Robbins on October 21, 2011.  (Tr. at 121-43).  ALJ Robins issued an unfavorable decision on March 6, 2012.  (Tr. at 209-15).  On June 24, 2013, the Appeals Council reviewed the March 6 decision and remanded the action to an Administrative Law Judge to:

- Further consider the issue of the claimant's performance of substantial gainful activity during the period at issue.  In so doing, obtain additional evidence concerning the claimant's work activity and income during the period at issue (20 CFR 404.1571-1576 and 416.971-976; Social Security Rulings 83-33, 83-34, 83-35, and 84-24).

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513). The additional evidence may include, if warranted and available, consultative examinations and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1520b).

(Tr. at 221-22). On March 10, 2014, Administrative Law Judge ("ALJ") Larry J. Butler held a second hearing. (Tr. at 44-91). On March 25, 2015, the ALJ issued an unfavorable decision, finding that Plaintiff was not under a disability from June 1, 2009, the alleged onset date, through December 31, 2012, the date last insured. (Tr. at 12-29).

On August 11, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on September 10, 2015. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 17).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2012. (Tr. at 20).[3] At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of June 1, 2009, through her date last insured of December 31, 2012. (Tr. at 20). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "history of coronary artery disease, history of cervical and lumbar degenerative disc disease with corresponding pain, high cholesterol and hypertension (20 CFR 404.1520(c))." (Tr. at 20).

At step three, the ALJ determined that through the date of December 31, 2012, the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. at 21).

At step four, the ALJ determined that through the date last insured of December 31, 2012, Plaintiff possessed the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). (Tr. at 21). Additionally, the ALJ found that Plaintiff:

> is able to occasionally lift/carry 20-pounds, frequently lift/carry 10-pounds, stand/walk approximately 6-hours during an 8-hour workday and sit approximately 6-hours during an 8-hour workday. The claimant has unlimited ability to push and pull, including operation of hand and/or foot controls. The claimant can occasionally climb, balance, stoop, kneel, crouch and crawl. The claimant can occasionally (up to one-third of a workday) reach overhead with her non-dominant

---

[3] Prior to addressing the issues raised regarding Plaintiff's disability, the ALJ addressed a Motion for Recusal of this Case and All Cases Assigned to Kushner & Kushner, Attorneys dated March 8, 2014. (*See* Tr. at 14-18). This discussion does not relate to the issues raised as to Plaintiff's social security benefits and, if applicable, will be addressed relating to the issue raised concerning bias.

left arm. The claimant has no limitations upon reaching overhead with her dominant right arm. The claimant has no limitation with regard to handling and fingering. The claimant should avoid exposure to hazards such as machinery and unprotected heights.

(Tr. at 21-22). The ALJ determined that through the date of last insured, December 31, 2012, Plaintiff was capable of performing her past relevant work as a counselor. (Tr. at 28). The ALJ found that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. at 28). The ALJ concluded that Plaintiff was not under a disability at any time from June 1, 2009, the alleged onset date, through December 31, 2012, the date last insured. (Tr. at 29).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises four issues. As stated by Plaintiff, they are:

1) The ALJ violated 20 C.F.R. § 404.1527 when he failed to properly consider and weigh the medical opinion evidence from treating providers utilizing the regulatory factors, as was ordered in the Appeals Council Remand Order of June 24, 2013.

2) The residual functional capacity ("RFC") assessment is not supported by substantial evidence because the ALJ failed to account for Plaintiff's peripheral neuropathy/carpal tunnel syndrome in evaluating her work capacity, in violation of 20 C.F.R. § 404.1545(b).

3) The ALJ's assessment of Plaintiff's credibility is not supported by substantial evidence because the ALJ mischaracterized the evidence of record and applied incorrect legal standards when he evaluated Plaintiff's pain complaints, in violation of 20 C.F.R. § 404.1529(c) and Social Security Ruling ("SSR") 96-7p.

4) The ALJ is biased against disability claimants with impairments causing nonexertional limitations and claimants represented by Kushner and Kushner, Attorneys.

(Doc. 19 at 3). The Court will address each issue in turn.

### A. Weight of Treating Physician

Plaintiff argues that the ALJ applied the incorrect criteria in evaluating Dr. Burford's physical capacity evaluation when affording Dr. Burford's opinion minimal weight. (Doc. 19 at 9; Tr. at 26). Plaintiff asserts that her treating physician, Fred Burford, D.O., completed a detailed physical capacity evaluation, indicating precisely what work-related limitations he believed Plaintiff to have. (Doc. 19 at 9). Dr. Burford found Plaintiff to be limited in exertional activities, such as standing, walking, and sitting in an eight-hour workday and also found Plaintiff limited in manipulation, pushing, and pulling activities with her upper extremities.

(Doc. 19 at 9). The Commissioner argues in response that the ALJ properly considered and weighed Dr. Burford's opinion and properly afforded it minimal weight. (Doc. 22 at 5).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Along with the claimant's age, education, and work experience, the RFC is considered in determining whether the claimant can work. *Id.* Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

7

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Beginning with Dr. Burford's treatment records, Dr. Burford saw Plaintiff on December 22, 2010 for an ear infection and to go over medications to lower the cost. (TR. at 761). On March 14, 2011, Plaintiff went to Dr. Burford for female problems, paper work, back pain, and bleeding. (Tr. at 759). The notes indicate that Plaintiff was "[c]urrently working because needs med. . . . temp a case manager – sits [sic] most of day . . . on Viocdin can work but needs breaks." (Tr. at 759). The notes indicate Plaintiff had joint pain, myalgia, and limited range of motion. (Tr. at 759). On that same day, Dr. Burford completed a Physical Capacity Evaluation. (Tr. at 614-615).

In the Physical Capacity Evaluation, Dr. Burford found the following:

1) Plaintiff could not stand/walk at one time in an 8-hour day;

2) Plaintiff could stand/walk for 2 hours throughout an 8-hour day with changing positions every 20-30 minutes;

3) Plaintiff could not sit at one time in an 8-hour day;

4) Plaintiff could sit for 2 hours throughout an 8-hour day with changing positions every 20-30 minutes;

5) Plaintiff could occasionally lift up to 10 lbs.;

8

> 6) Plaintiff was able to use her hands for repetitive simple grasping, but not for pushing and pulling or fine manipulation;
>
> 7) Plaintiff could not use her feet for repetitive movements as in operating foot controls;
>
> 8) Plaintiff was able to squat occasionally;
>
> 9) Plaintiff was not able to bend, crawl, or climb; and
>
> 10) Plaintiff was able to reach above shoulder level.

(Tr. at 614-15).

The ALJ considered Dr. Burford's treatment records as well as the Physical Capacity Evaluation. (Tr. at 26). The ALJ afforded Dr. Burford's Physical Capacity Evaluation minimal weight noting that Dr. Burford "opined that the claimant could not even perform sedentary work." (Tr. at 26). The ALJ accurately summarized Dr. Burford's findings and then listed many reasons why he afforded Dr. Burford's Physical Capacity Evaluation minimal weight. (*See* Tr. at 27-28). The initial reasons mainly relate to the Physical Capacity Evaluation form. (*See* Tr. at 27-28). For example, the ALJ found that the Physical Capacity Evaluation: (1) was not organized in the standard manner (2) did not incorporate definition of terms such as "frequently" or "occasionally;" (3) did not reflect an allowance for normal breaks; (4) did not address whether it applied to upper or lower extremities regarding pushing and pulling; (5) did not include the specific postural limitations of balancing, stooping, kneeling and crouching but instead used the terms "bend" and "squat;" (6) did not indicate if reaching overhead was limited bilaterally; (7) did not indicate how limited the hands were for repetitive simple grasping, pushing and pulling and fine manipulation or whether it was limited bilaterally; and (8) failed to include an acknowledgement that Dr. Burford's opinion was expressed in terms of reasonable medical certainty. (Tr. at 27-28).

Plaintiff contends that the above reasons are not sufficient to afford Dr. Burford's opinion minimal weight. The Court agrees that some, if not most, of the above reasons do not rise to the level of discounting a treating physician's opinion. Statements such as the Evaluation not being organized in a standard manner and failing to incorporate definitions to commonly used terms are not sufficient.

However, the ALJ did not simply rely on this list of reasons alone. In addition to the above reasons, the ALJ also found that Dr. Burford's opinion was not supported by objective medical findings and his opinion was not consistent with the weight of the available evidence. (Tr. at 28). The ALJ found that Dr. Burford treated Plaintiff primarily for fever, hypertension, and cholesterol issues and he found little correlation between Dr. Burford's contemporaneous treatment notes and Dr. Burford's extremely restricted exertional abilities for Plaintiff. (Tr. at 28). Moreover, the ALJ noted that Dr. Burford failed to provide any basis for his conclusions as to Plaintiff's extremely limited exertional abilities. (Tr. at 28).

The Court finds that these reasons are sufficient to support affording Dr. Burford's opinion minimal weight. *See Phillips*, 357 F.3d at 1240. Good cause to discount a treating physician's opinion includes when the treating physician's opinion is not bolstered by the evidence and when the treating physician's opinion is conclusory. *Id.* In the instant case, the treatment notes from the date the Physical Capacity Evaluation was completed indicate that Plaintiff was then-currently working as a temporary case manager and that she sits most of the day, can work even though she is taking Vicodin, but she does need breaks. (*See* Tr. at 759). These treatment notes are a far cry from someone who is only able to sit for 2 hours in an 8-hour day, or stand for 2 hours in an 8-hour day. (*See* Tr. at 614). Clearly, being able to work, even on a temporary basis, does not support Dr. Burford's opinion as to Plaintiff's extreme

limitations. Moreover, Dr. Burford failed to explain the contradiction in his findings that Plaintiff was unable to sit or stand/walk for more than 2 hours in and 8-hour day, yet Plaintiff was able to work and the work encompassed sitting most of the day. (Tr. at 759). Absent a clear explanation and support by Dr. Burford for his findings, the Court finds that Dr. Burford's conclusory statements are not supported by his treatment notes and he fails to indicate other medical evidence of record that supports these extreme limitations. Accordingly, the Court determines that the ALJ's opinion is supported by substantial evidence and the ALJ did not err in affording minimal weight to Dr. Burford's opinion as set forth in the Physical Capacity Evaluation.

### B. Peripheral Neuropathy

Plaintiff argues that the ALJ erred in failing to consider or mention her impairment of peripheral neuropathy in her upper extremities when determining Plaintiff's RFC. (Doc. 19 at 14). Plaintiff contends that she was diagnosed with peripheral neuropathy from an acceptable medical source, takes medication for her condition, and testified as to the limitations caused by this condition. (Doc. 19) at 14). The Commissioner argues that the ALJ did not find Plaintiff's peripheral neuropathy a severe impairment and Plaintiff failed to demonstrate that she suffered from work-related limitations from her peripheral neuropathy prior to December 31, 2012, her date last insured. (Doc. 22 at 11).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can

11

work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Id.* An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).

In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010); *Phillips v. Barnhart*, 357 F.3d at 1238-39; 20 C.F.R. § 404.1520(e). The Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Further, in order to be entitled to disability insurance benefits under Title II of the Act, a claimant must establish that she became disabled on or prior to the expiration of her insured status. *See* 20 C.F.R. §§ 404.315; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting that a claimant must prove she was disabled on or before the date last insured for disability insurance benefits).

Turning to the evidence of record, on October 29, 2008, Plaintiff was diagnosed with "unspecified idiopathic peripheral neuropathy" due to wrist cysts as evidenced in an MRI. (Tr. at 556). The condition was managed with medicine. (Tr. at 556). Plaintiff continued to be diagnosed with peripheral neuropathy, *inter alia*, on March 9, 2009, January 12, 2012, February 10, 2012, July 19, 2012, October 31, 2012, February 28, 2013, July 3, 2013, and August 7, 2013. (Tr. at 553, 710, 711, 717, 725, 733, 741, 747, 842). On October 31, 2012, July 13, 2013, and August 7, 2013, the treatment notes indicated that Plaintiff reported "that the gabapentin is

somewhat effective in helping with her neuropathy although it is still present." (Tr. at 711, 726, 841).[4] At the hearing, Plaintiff testified that she has a lot of "numbness in my hands" and is unable to "do a lot of computer work either." (Tr. at 63). She also testified that it is worse in her dominant right hand, she wears wrist braces at night, and takes medication. (Tr. at 63). Further, Plaintiff testified that she has trouble holding things and they just fall out of her hands. (Tr. at 64).

The Commissioner agrees that Plaintiff was diagnosed with peripheral neuropathy, but argues that diagnosis alone is not sufficient to prove the existence of an impairment. (Doc. 22 at 11). The Court concurs that a diagnosis alone is "insufficient to establish that a condition caused functional limitations." *Wood v. Astrue*, 2012 WL 834137, *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n.6 (11th Cir. 2005)). In the instant case, however, the issue is whether the ALJ considered the diagnosis of peripheral neuropathy and any limitations stemming from this diagnosis.

In the decision, the ALJ fails to mention or consider Plaintiff's diagnosis of peripheral neuropathy. (Tr. at 13-29). The RFC does not include any manipulation limitations and specifically states that Plaintiff "has no limitations with regard to handling and fingering." (Tr. at 21-22). The only mention in the decision of any issues with Plaintiff's hands is when the ALJ summarized Plaintiff's testimony and noted that Plaintiff "experiences numbness in both hands, right worse than left. Claimant has been prescribed wrist braces and she sleeps with the braces

---

[4] The Commissioner argues that Plaintiff failed to provide evidence supporting her position that peripheral neuropathy limited her ability to work prior to her date last insured of December 31, 2012, citing to an August 2013 note that indicting Plaintiff experienced breakthrough symptoms even while taking medication. (Doc. 22 at 12, n.3; Tr. at 20). Upon review of the record, the Court finds that Plaintiff had the same complaint on October 31, 2012, prior to Plaintiff's date last insured.

on." (Tr. at 23). Other than that mention, the decision contains no references to Plaintiff's diagnoses of peripheral neuropathy.

Remand is warranted "when an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839-40 (11th Cir. 1992)). In the instant case, Plaintiff was diagnosed with peripheral neuropathy in 2008 and continued to be diagnosed with peripheral neuropathy from that time through the date last insured and beyond. (*See* Tr. at 553, 710, 711, 717, 725, 733, 741, 747, 841, 842). Further, Plaintiff testified as to her limitations regarding her peripheral neuropathy at the hearing. (*See* Tr. at 63).

Although the Commissioner asserts that physical examinations show a full range of motion in Plaintiff's shoulder, elbows, and wrists and that Plaintiff's medication was somewhat effective in treating neuropathy, the ALJ failed to cite to these medical records in connection with Plaintiff's peripheral neuropathy. (*See* Doc. 22 at 12). Additionally, even though the ALJ did not find Plaintiff's statements concerning intensity, persistence, and limiting effects of these symptoms to be entirely credible, the ALJ did not make any mention or findings related to Plaintiff's peripheral neuropathy. (*See* Tr. at 26). Thus, to assume that the ALJ found Plaintiff's statements as to the numbness in her hands and her manipulation limitations not credible, the Court would have to rely on the *post hoc* rationale of the Commissioner to support the ALJ's decision, especially when it is clear that the ALJ failed to mention or consider Plaintiff's peripheral neuropathy in combination with Plaintiff's other impairments. *See Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (citation and internal quotation marks omitted). Given the ALJ's lack of analysis as to Plaintiff's peripheral neuropathy impairment, the Court is unable to conduct a meaningful judicial review of the ALJ's opinion

concerning his conclusion that Plaintiff had no limitations with regard to handling and fingering as found in Plaintiff's RFC.  *See Robinson v. Astrue*, No. 8:08-CV-1824-T-TGW, 2009 WL 2386058, at *4 (M.D. Fla. Aug. 3, 2009).

Accordingly, the Court finds that the ALJ erred in failing to consider Plaintiff's impairment of peripheral neuropathy and possible associated limitations in combination with Plaintiff's other limitations in formulating Plaintiff's RFC.  Thus, the Court finds that remand is warranted.

### C.  Credibility

Plaintiff's third issue focuses on the ALJ's credibility determination.  The issue of credibility cannot be resolved until it is clear to the Court that the ALJ properly considered Plaintiff's peripheral neuropathy impairment in combination with Plaintiff's other impairments.  Because the Court finds that, upon remand, the ALJ must evaluate Plaintiff's peripheral neuropathy impairment and that evidence may impact the Court's analysis of other elements of the ALJ's decision, the Court finds that any ruling of the issue of Plaintiff's credibility is premature at this time.

### D.  Bias

Plaintiff also argues that if this matter is remanded, a different ALJ should be assigned to the remanded case.  Plaintiff contends that ALJ Butler has demonstrated signs of bias in cases that involve Plaintiff's counsel and in cases involving nonexertional limitations.  The Court reviewed the record, including the hearing transcript.  Absent a specific citation to the record that shows bias or prejudice by ALJ Butler, the Court finds that on its face, the record fails to reflect evidence of bias or prejudice by ALJ Butler.  Moreover, this Court cannot consider matters that do not relate to this case in determining whether to remand this action to different ALJ.  *See Roth*

*v. Comm'r of Soc. Sec.*, No. 608-CV-296-ORL-28DAB, 2009 WL 536522, at *8 (M.D. Fla. Mar. 3, 2009).

The Court recognizes that an ALJ "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. Plaintiff has failed to show specific instances of prejudice or bias by ALJ Butler *in this case*. Thus, the Court will not require that the Commissioner appoint a different ALJ on remand. Although the Court declines to direct the Commissioner to assign this remand to an ALJ other than ALJ Butler, the Court will require the Commissioner to consider the issue of whether a remand to an ALJ other than ALJ Butler is appropriate to avoid any appearance of bias, but leaves this decision to the discretion of the Commissioner.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence as to the issue of Plaintiff's residual function capacity. Upon remand, the Commissioner should reevaluate Plaintiff's residual functional capacity by considering Plaintiff's peripheral neuropathy impairment in combination with Plaintiff's other impairments when determining Plaintiff's residual functional capacity and reevaluate Plaintiff's credibility.

**IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reevaluate Plaintiff's residual functional capacity by considering Plaintiff's peripheral neuropathy impairment in combination with Plaintiff's other impairments and to reevaluate Plaintiff's credibility.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on February 7, 2017.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties